```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                             :
ADELE R. MING, *pro se*,                                     :
                                                             :
                              Plaintiff,                     :
                                                             :      **MEMORANDUM AND ORDER**
                  -against-                                  :      07 -CV- 4567 (DLI) (SMG)
                                                             :
MICHAEL J. ASTRUE,                                           :
Commissioner of Social Security,                             :
                                                             :
                              Defendant.                     :
------------------------------------------------------------ x
```
**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Adele Ming was overpaid disability insurance benefits ("DIB") by the Social Security Administration ("SSA") and requested a waiver of overpayment recovery. An Administrative Law Judge ("ALJ") denied plaintiff's waiver request by written decision dated June 23, 2005, concluding that plaintiff was not without fault in accepting the overpayments and that recovery by the SSA would not be against equity or good conscience, nor would it defeat the purpose of Title II of the Social Security Act ("Title II"). The Appeals Council subsequently denied plaintiff's request for review on August 29, 2007. The ALJ's decision became the Commissioner's final decision on that date. In response, plaintiff filed this complaint, *pro se*, on October 29, 2007, pursuant to 42 U.S.C. § 405(g), requesting review of the Commissioner's final decision. The Commissioner moved for judgment on the pleadings pursuant to the Federal Rules of Civil Procedure 12(c). Plaintiff filed an affidavit opposing the motion. For reasons set forth more fully below, defendant's motion is denied and the matter is remanded for further proceedings consistent with this opinion.

**BACKGROUND**

In August 1993, plaintiff began receiving DIB after sustaining a brain injury as a result of a serious car accident. (R.[1] at 231, 286; Compl. at ¶ 4.) Plaintiff's spouse, Richard Ming, and two children, Melissa and Matthew Ming, also received DIB. (R. at 91, 94, 280.) Plaintiff, a public school teacher with twenty years of experience, began working again in February of 1994, but was allowed a trial work period by the SSA, lasting nine months. (R. at 67, 284-85, 287.) The trial work period permitted plaintiff to test her ability to work without relinquishing her right to receive benefits if her disability resurfaced. (R. at 67.) Plaintiff also was paid for three months following the end of the trial work period, making the last month of her entitlement to benefits January 1995. (*Id.*) When plaintiff continued to work after January 1995, DIB payments should have ceased. Instead, plaintiff and her family members continued to receive DIB payments until June 2000. Plaintiff and her spouse received numerous letters between November 1995 and April 2000 notifying them that plaintiff's reported income warranted a re-evaluation of her entitlement to disability checks and that overpayments had occurred. (R. at 16, 30, 43, 49, 51, 56, 60, 66.) The record reflects that plaintiff began receiving overpayment notices in October 1998. (R. at 51.)

Plaintiff maintains that she was not at fault in receiving the overpayments. (R. at 134.) She claims to have visited a local Social Security Office ("the local SSA office") several times to report her work activity, where she was told that she would be notified of a cessation of DIB by mail. (R. at 135, 183-84, 274, 288.) In her June 12, 2003 waiver request, plaintiff wrote she had been told "payments will stop soon." (R. at 135.) This statement is inconsistent with a statement plaintiff made almost two months later. On an SSA form dated August 6, 2003, plaintiff stated that she visited the local SSA office several times, and that she was told that because she was on

---

[1] "R." refers to the administrative record filed by the Commissioner in this case.

an extended thirty-six month trial work period, her benefits would stop when necessary. (R. at 183-84.) Plaintiff also stated that because she was repeatedly "assured everything was O.K." and "told . . . not to worry because [she] was entitled to it," she felt "misinformed by SSA." (*Id.*)

On April 18, 2000, the SSA sent plaintiff a letter explaining that her benefits were likely to cease because of her work activity. (R. at 67.) The letter also explained that "[a]fter the [nine month] trial work period . . . [y]ou get an extended period of eligibility that begins right after the trial work period" that lasts for thirty-six months, whereby the SSA "restart[s] payments for any months(s) [sic] your work is not substantial if your health problems still meet our rules." (*Id.*) Plaintiff mentioned this extended period of eligibility in her pleadings, alleging that she was entitled to benefits for the entire thirty-six months, thus reducing the amount she owes the SSA. (Pl.'s Aff. in Opp'n to Def.'s Mot. at 2-3; R. at 273-76.) Plaintiff does not allege, nor does the record show, any gap in employment earnings during this period. (R. at 28.)

On December 18, 2000, the SSA sent several notices of overpayment to the Ming family. (R. at 86-99.) The letters stated that plaintiff received overpayments in the amount of $72,482, which included money paid to plaintiff's spouse and two children, less what was already recovered by the SSA in the form of returned checks and withheld tax refunds. (*Id.*) Three years later, plaintiff requested that the SSA waive overpayment recovery, alleging that the overpayment was not her fault. (R. at 134-41.) The SSA rejected plaintiff's request and scheduled a personal conference for August 6, 2003. (R. at 168, 182.) On that date, plaintiff explained that her husband's liver cancer had worsened, reducing his ability to earn income increasing their medical expenses. (R. at 183-184.) Despite this change in circumstance, SSA claims representative, E. Aponte, denied plaintiff's request for a waiver, finding that plaintiff's alleged visits to the local SSA office were undocumented and that she was not without fault in causing the overpayment. (R. at 185.)

3

On October 10, 2003, following the initial denial of plaintiff's waiver request, she requested a hearing with an ALJ. (R. at 213-15.) Plaintiff appeared with counsel at the May 19, 2005 hearing and asserted that she was not at fault for the overpayment because she notified the SSA of her employment in person and because repayment would be too great a financial burden. (R. at 281-82.) Plaintiff stated that she had visited the local SSA office on Avenue U in Brooklyn, New York to report her work activity a "week or two" after returning to work, filled out a form, and was told she would be notified when her checks would stop. (R. at 277, 288.) The ALJ reviewed plaintiff's monthly expenses and assets. (R. at 290-93.) At the end of the hearing, plaintiff agreed to pay the remaining balance[2] in monthly installments of $250.00, still claiming to be without fault. (R. at 297.) At the time of plaintiff's hearing, she had already repaid approximately $19,000.00 of the overpayment in the form of returned checks and withheld tax refunds. (R. at 295-96.)

By written decision dated June 23, 2005, the ALJ denied plaintiff's request for a waiver of overpayment recovery, stating that "even if [plaintiff] . . . timely report[ed] her return to work and . . . did not cause the overpayment" plaintiff, "who was a school teacher, clearly knew, or at the very least should have known, that she and her children were not entitled to the social security checks they continued to receive for more than six years after she started working."[3] (R. at 14.) Accordingly, the ALJ found that plaintiff was not without fault in accepting the overpayments and that recovery by the SSA would not defeat the purpose of Title II, nor would it be against equity or good conscience. (R. at 15.)

On July 29, 2005, plaintiff wrote a letter expressing dismay that her May 29 hearing ended abruptly, before several issues were addressed. (R. at 273-76.) Plaintiff disputed the

---

[2] The ALJ estimated that plaintiff's remaining balance was approximately $78,000. (R. at 296.)
[3] The ALJ's decision letter mentioned plaintiff "and her three children." (R. at 15.) Richard Ming, plaintiff's late spouse, had received auxiliary benefits under plaintiff's earnings record and was a representative payee for their two children Melissa and Matthew. (R. at 91-103.)

4

amount she owed, claiming that her period of entitlement ended in November 1997, not in February 1995, and that she should not "be asked to pay back monies [her] deceased husband used for [their] 2 children." (R. at 274, 276.)

On August 29, 2007, the Appeals Council denied plaintiff's request for review of the ALJ's decision because her "continued receipt of the disability payments when [she was] working was not reasonable," and because the ALJ's determination that plaintiff was "'not without fault' is supported by the record." (R. at 6.) Plaintiff filed this action for review of the Commissioner's final decision on October 29, 2007, pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### A. Standard of Review

Claimants may bring an action in federal district court seeking judicial review of the Commissioner's denial of a waiver of overpayment recovery "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court reviewing the final determination of the Commissioner must decide whether the ALJ applied the correct legal standards and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotation marks omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

5

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

In light of plaintiff's *pro se* status, the court holds her pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court will interpret plaintiff's pleadings "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

**B.     Governing Law**

   1.     *Waiver of Overpayment Recovery*

The Social Security Act only permits a waiver of overpayment recovery when: (1) the overpaid person is without fault, and (2) recovery would defeat the purpose of Title II or would be against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a). Otherwise, the Commissioner is authorized to recover the overpayment under SSA regulations. 42 U.S.C. § 404(a)(1)-(A).

SSA regulations provide that an individual is at fault when she accepts an overpayment "[s]he either knew or could have been expected to know was incorrect." 20 C.F.R. § 404.507(c). Before determining fault, the SSA must consider the overpaid individual's intelligence, education level, proficiency with the English language, or any physical or mental limitation. *See* 42 U.S.C. § 404(b); 20 C.F.R. § 404.507. Any alleged mistake by the SSA in making the overpayment(s) is irrelevant—a fault determination is made solely with respect to what the overpaid individual knew or could be expected to have known. *See* 20 C.F.R. § 404.507. Furthermore, a recipient of overpayments can be at fault without a showing of bad faith. *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983) (citing *Morgan v. Finch*, 423 F.2d 551 (6th Cir. 1970)). However, "[w]here an individual or other person on behalf of an individual accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act . . ., such individual, in accepting such overpayment, will be deemed to be *without fault*." 20 C.F.R. § 404.510a.

Recovery of overpayment by the SSA defeats the purpose of Title II when it would deprive the claimant of income required for ordinary and necessary living expenses, such as food, clothing, rent, mortgage, or utilities. 20 C.F.R. § 404.508(a)-(1). To be against equity and good conscience, a claimant must show that she "changed . . . her position for the worse or relinquished a valuable right . . . because of the overpayment itself" irrespective of her financial status at the time. 20 C.F.R. § 404.509(a)-(b). Plaintiff has the burden of establishing her entitlement to a waiver of overpayment recovery. *See* 20 C.F.R. § 404.506(c).

2. *Disability Insurance Benefits*

A claimant is entitled to DIB if she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment that could likely result in death or has lasted at least one year (or could likely last at least one year). 42 U.S.C. § 423(d)(1)(A). A claimant is not "disabled" for purposes of the Social Security Act if she is capable of substantial gainful activity, regardless of her medical condition. 20 C.F.R. § 404.1520(a)(4)(i). A proper DIB claimant, however, may be given a trial work period, whereby substantial gainful activity will not result in the cessation of benefits. 42 U.S.C. § 422(c)(2); 20 C.F.R. § 404.1592. The trial work period lasts nine months, but the months need not be consecutive. 20 C.F.R. § 404.1592. Claimants may also be given a "reentitlement period," which is a thirty-six month period of extended eligibility. 20 C.F.R. § 404.1592a. During the reentitlement period, the SSA will pay a claimant only for months where they could not perform substantial gainful activity. 20 C.F.R. § 404.1592a(a). This period begins "with the first month following completion of 9 months of trial work" and ends on either the "month before the first month in which your impairment no longer exists or is not medically disabling" or "[t]he last day of the 36th month following the end of your trial work period." 20 C.F.R. § 404.1592a(b).

**C. Application**

The ALJ concluded that plaintiff was not without fault in accepting the overpayments and recovery of the overpayment by the SSA would not be against equity or good conscience, nor would it defeat the purpose of Title II. (R. at 14.) Plaintiff now alleges that the ALJ's denial of her waiver request was contrary to the law, not supported by substantial evidence, and that she was entitled to benefits throughout the thirty-six month reentitlement period. (Compl. at ¶ 9; Pl.'s Aff. in Opp'n to Def.'s Mot. at 3.) Lastly, plaintiff requests that the court review her

medical documents to verify that her disability is "permanent." (Pl.'s Aff. in Opp'n to Def.'s Mot. at 6.)

*1.  The ALJ's "Not Without Fault" Determination*

When considering whether a waiver of overpayment recovery is warranted, federal regulations require the ALJ to weigh "all pertinent circumstances" in determining whether an individual is at fault. 20 C.F.R. § 404.507. These circumstances include the overpaid individual's age, intelligence, proficiency with the English language, or any other physical or mental deficiency. *Id.* Here, the ALJ noted that it would be difficult for plaintiff, a public school teacher with twenty years of experience, to claim she was not at fault because she is intelligent and capable of understanding, as opposed to someone who could not speak English. (R. at 284-85, 293.) In his decision, the ALJ also noted that plaintiff was forty-eight years old. (R. at 13A, 290.)

In addition to the above considerations, the ALJ should have considered the implications of 20 C.F.R. § 404.510a, because plaintiff claimed that she was misinformed by the SSA during her numerous visits to its Brooklyn office. *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1044 (2d Cir. 1984). "[W]here an individual . . . accepts [an] overpayment because of reliance on erroneous information from an official source within the Social Security Administration" regarding a pertinent provision of the Social Security Act, that individual "will be deemed to be without fault." 20 C.F.R. § 404.510a.

Despite plaintiff's claim, the ALJ failed to consider section 404.510a in his decision. The decision merely notes that plaintiff "went on to state that on several occasions, she went to the local social security office and reported her work, only to be told about the nine-month trial work period and that she would be informed when her checks would stop." (R. at 13A.) A review of the record indicates that plaintiff made additional allegations regarding what she was told by

9

personnel at the local SSA office. First, on a form entitled "Request For Waiver Of Overpayment Recovery Or Change In Repayment Rate," plaintiff stated, "I spoke with a representative of SSA, who stated that payments will stop soon. I also went to office [sic] and notified that checks will be stopped." (R. at 135.) In plaintiff's "Statement of Claimant or Other Person" form, she asserted, "I did come into [sic] Social Security several times. I always spoke only with the receptionist. I was told I was on a 36 month trial work [sic] and SSA will stop my benefits when needed. Each time I came to question it I was assured everything was O.K. and sent home . . . I feel I was misinformed by SSA. At the time my family received payments I thought we were due the money because I was still disabled although I was working and each person I spoke with at SSA told me not to worry I was entitled to it." (R. at 183-84.) During the hearing, plaintiff also explained that SSA personnel stated, "We will contact you to let you know when your checks will stop." (R. at 288.) At the hearing, plaintiff's attorney tried to explain other circumstances involving the SSA. (R. at 289.) A reading of this portion of the transcript seems to indicate that plaintiff's counsel was attempting to discuss what plaintiff was told during her numerous visits to the local SSA office. The ALJ responded, "Okay. Let's leave that out for the moment." (*Id*.) The ALJ proceeded to discuss plaintiff's financial circumstances for the duration of the proceeding in an effort to determine how much of the overpayment she could afford to pay on a monthly basis. (R. at 289-97.)

In spite of the foregoing, the ALJ neither discussed plaintiff's allegations during the hearing nor considered them in his written decision. It is not clear from the record what information provided to plaintiff by personnel at the local SSA office, if any, was erroneous or what information might have been factually correct but misunderstood by plaintiff. *See* Program Operations Manual System ("POMS") § GN 02250.061 (A)(2) (stating that "a misunderstanding of correct information from an official source does not constitute misinformation"). It is also not

clear whether the information provided to plaintiff by SSA personnel concerned the entire period of overpayment or whether it only related to the trial work period or reentitlement period. Such inquiries cannot be made by this court. The ALJ should have considered plaintiff's claim that she was misinformed and developed the record in an effort to illuminate the details of her claim. This failure requires that plaintiff's case be remanded for further fact finding. If plaintiff relied on erroneous information provided by SSA employees, she was not at fault for continuing to accept overpayments. *Valente*, 733 F.2d at 1044-45; *Dorman v. Harris*, 633 F.2d 1035, 1040 (2d Cir. 1980).

Credibility will be a critical factor in determining whether plaintiff is without fault under these circumstances. The ALJ may have discredited plaintiff's claims of being misinformed but did not state so during the hearing or in his written decision. Accordingly, on remand, the ALJ must also make an explicit determination regarding plaintiff's credibility concerning these allegations. *Valente*, 733 F.2d at 1045 (requiring an explicit credibility determination when plaintiff's credibility is a "critical factor" in the without-fault calculus).

In light of the foregoing, the court declines to review the ALJ's findings concerning the second prong of the waiver of overpayment recovery analysis, *i.e.*, whether recovery would defeat the purpose of Title II or would be against equity and good conscience, because, if ALJ finds plaintiff to be without fault due or her reliance on erroneous information from an official source within the Social Security Administration, recovery of the overpayment must be waived. Recovery under such circumstances would be "against equity and good conscience." 20 C.F.R. § 404.512(a). For the same reason, the court also declines to consider whether plaintiff is entitled to waiver of overpayment recovery related to the DIB payments she received during the thirty-six month reentitlement period.

2. *The Court Cannot Review Plaintiff's Medical History or the SSA's Disability Determination*

Plaintiff also asks the court to review her medical documents to verify that her disability is "permanent." (Pl.'s Aff. in Opp'n to Def.'s Mot. at 6.) The issue of plaintiff's alleged permanent disability was never brought before an ALJ or the Appeals Council for determination. This court can only review a "final decision of the Commissioner of Social Security made after a hearing to which [plaintiff] was a party." 42 U.S.C. § 405(g); *Califano v. Sanders*, 430 U.S. 99, 108 (1977). A decision is not final until the Appeals Council has denied review or decided the case after review. *See* 20 C.F.R. § 404.981. Thus, the court cannot review plaintiff's disability status or her medical records.

## CONCLUSION

For the reasons set forth above, the Commissioner's motion is denied. Plaintiff's case is remanded for further proceedings consistent with this opinion.

SO ORDERED.

Dated: Brooklyn, New York
August 13, 2009

/s/
DORA L. IRIZARRY
United States District Judge